FILED
03/20/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2019

## IN RE CONNOR B.

**Appeal from the Chancery Court for Lincoln County**
**No. AD392        J. B. Cox, Chancellor**

_____

**No. M2019-00181-COA-R3-PT**

_____

In this termination of parental rights action, the mother has appealed the trial court's grant of a default judgment to the petitioners following the mother's filing of an answer that did not contain her signature in accordance with Tennessee Code Annotated § 36-1-117(o). Although we determine that the trial court properly granted a default judgment to the petitioners based upon the mother's failure to file a proper answer within the time allowed, we vacate the trial court's termination of the mother's parental rights, determining that the appellate record is insufficient to afford appropriate review of the statutory grounds for termination and best interest analysis.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Jonathan C. Brown, Fayetteville, Tennessee, for the appellant, Virginia B.

Karla D. Ogle, Fayetteville, Tennessee, for the appellees, Robert A. and Taylor A.

## OPINION

### I. Factual and Procedural History

On June 11, 2018, Robert A. and Taylor A. ("Petitioners") filed a petition in the Lincoln County Chancery Court ("trial court"), seeking to terminate the parental rights of Virginia B. ("Mother") and Tommy R. ("Father") to their minor child, Connor B. ("the

Child"), who was born in February 2013.[1] Petitioners explained that they were the brother and sister-in-law of the Child and that the Child had resided with them since December 2, 2016, when he had been removed from Mother's custody. Petitioners averred that on December 28, 2016, the Child had been adjudicated to be dependent and neglected in Mother's custody. Petitioners alleged that when the Child came to live with them, the Child's teeth were black from lack of dental care and from smokeless tobacco the parents had allowed the three-year-old to use. Petitioners further alleged that the Child was dependent and neglected due to the parents' criminal activity and use of drugs.

As grounds for termination of Mother's parental rights, Petitioners averred that (1) the parents had abandoned the Child by failing to provide a suitable home for four months following the Child's removal, (2) the parents had abandoned the Child by willfully failing to support the Child and willfully failing to visit or engage in more than token visitation, and (3) the conditions leading to the Child's removal still persisted.[2] Petitioners further alleged that termination of Mother's parental rights was in the Child's best interest. Petitioners concomitantly filed interrogatories and a request for production of documents to be served upon Mother along with the termination petition.

On July 24, 2018, Petitioners filed a motion seeking a default judgment against Mother. In their motion, Petitioners asserted that Mother had been served with process on June 22, 2018, and had failed to appear or otherwise respond.

On August 8, 2018, the trial court appointed a guardian *ad litem* in this matter. Also on August 8, 2018, following Mother's filing of an affidavit of indigency, the court appointed counsel for Mother. Mother subsequently filed an answer to the petition on August 24, 2018; however, Mother's answer was signed by her counsel and not personally by Mother.

On October 25, 2018, the trial court entered an order granting a continuance of the hearing date at Mother's request. The court noted that a hearing had been scheduled on August 14, 2018, concerning the motion for default judgment and that Mother had appeared "very late" for said hearing. In its order, the court stated that Mother had been "admonished" by the judge and was directed to "cooperate with her appointed lawyer . . . and . . . complete the First Set of Interrogatories and file them with the Court on or before Friday, August 24, 2018 before 4:00 p.m." Mother was also directed in the order to cooperate with her attorney and file an answer containing her signature "or the Court

---

[1] We note that Father's parental rights were terminated by the trial court and that he is not participating in this appeal. We will, therefore, confine our analysis solely to the facts and issues applicable to Mother's appeal. We also note that although the Child's first name has been spelled two different ways in the pleadings, we have chosen to adopt the spelling contained in the Child's birth certificate.

[2] Additional grounds for termination were alleged solely as to Father.

would relieve [Mother's counsel] of his appointment and would allow [Petitioners' counsel] to proceed by default in the termination of parental rights case." The court further warned that if Mother were late to court in the future, she "could be facing contempt of court."

On December 28, 2018, the trial court entered an order granting a default judgment in favor of Petitioners against Mother pursuant to Tennessee Rule of Civil Procedure 55.01. In its order granting default judgment, the court noted that Mother had "failed to appear in Court and [had] failed to plead or otherwise defend as provided by law and the Tennessee Rules of Civil Procedure and as ordered by the Court on August 14, 2018." The court concomitantly entered a separate order terminating Mother's parental rights. In its termination order, the trial court established that a hearing had been conducted on November 6, 2018, wherein only Petitioners, their counsel, and the guardian *ad litem* were present. The court determined that Mother had failed to file an answer in accordance with the Tennessee Rules of Civil Procedure and as directed in the court's previous order. The court also found that Mother had failed to appear for the hearing and defend against the action despite having received notice of the hearing date.

Following the presentation of proof by Petitioners, the trial court found by clear and convincing evidence that Mother had abandoned the Child by failing to provide a suitable home, by willfully failing to visit the Child, and by willfully failing to support the Child. The court also found that the conditions leading to the Child's removal from Mother's custody still persisted and that Mother had failed to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the Child. The court further determined that termination of Mother's parental rights was in the Child's best interest. Mother timely appealed. Following the filing of competing statements of the evidence by the parties, the trial court adopted the statement submitted by Petitioners as an accurate representation of the trial court proceedings.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred by failing to accept Mother's answer filed in this matter.

2.  Whether the trial court erred by entering a default judgment against Mother based on her failure to file an answer containing her signature and her failure to respond to discovery.

3. Whether the trial court erred by determining that termination of Mother's parental rights was in the Child's best interest.

Petitioners have raised the following additional issues, which we have also restated slightly:

4. Whether Mother's notice of appeal was timely filed when her counsel allegedly lacked standing to represent Mother on appeal.

5. Whether the trial court erred by ordering that Mother's answer would be stricken as a sanction pursuant to Tennessee Rule of Civil Procedure 11.03.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has explained:

The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)]. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating

- 4 -

parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.* 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

\* \* \*

In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). In addition, as our Supreme Court has explained, this Court is required "to review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 525.

IV. Notice of Appeal

As a threshold question, Petitioners argue that Mother's counsel lacked standing to represent her in the filing of her notice of appeal. According to Petitioners, Mother's

counsel could not file a motion seeking counsel's reappointment on appeal in the absence of a new affidavit of indigency and request for appointment of counsel on appeal filed by Mother. Petitioners posit that but for Mother's counsel filing a motion for reappointment and subsequently filing a notice of appeal on Mother's behalf, the time for filing such notice of appeal would have expired and Petitioners could have proceeded to adopt the Child. Although we are mindful of Petitioners' desire for permanency for the Child, we disagree with their argument regarding the timeliness of the notice of appeal in this case.

"Tennessee statutorily provides the right to appointed counsel for indigent parents at every stage of termination of parental rights proceedings, including the appeal." *In re Bentley D.*, 537 S.W.3d 907, 913 (Tenn. 2017) (citing *In re Carrington H.*, 483 S.W.3d at 527-28 (in turn citing Tenn. Code Ann. § 37-1-126(a)(2)(B)(ii); Tenn. R. Sup. Ct. 13). Tennessee Supreme Court Rule 13, § 1(d)(2)(B) expressly states that in cases "involving allegations against parents that could result in finding a child dependent or neglected or in terminating parental rights," "counsel will be appointed if the party is indigent and . . . requests appointment of counsel." Rule 13 further provides that "[a]ppointed counsel shall continue to represent an indigent party throughout the proceedings, including any appeals, until the case has been concluded or counsel has been allowed to withdraw by a court." Tenn. R. Sup. Ct. 13, § 1(e)(5).

Our review of the record on appeal demonstrates that Mother filed an affidavit of indigency on August 7, 2018. The trial court entered an order that same day, determining Mother to be indigent and finding that she qualified for the appointment of legal counsel to represent her. The court therefore appointed attorney Jonathan Brown as Mother's counsel. Mr. Brown proceeded to file an answer to the petition on Mother's behalf, which did not contain Mother's signature. Rather, the answer was signed by Mr. Brown, in his representative capacity as Mother's counsel, and was certified as having been mailed to Petitioners' counsel.

On October 25, 2018, the trial court entered an order granting a continuance of the trial date at Mother's request. The court stated in the order that a hearing had been scheduled on August 14, 2018, concerning Petitioners' previously filed motion for default judgment. The trial court directed Mother to "cooperate with her appointed lawyer . . . and . . . complete the First Set of Interrogatories and file them with the Court on or before Friday, August 24, 2018 before 4:00 p.m." Mother was also directed to file an answer containing her signature, "or the Court would relieve Mr. Brown of his appointment and would allow [Petitioners' counsel] to proceed by default in the termination of parental rights case."

The statement of the evidence filed by Petitioners and certified by the trial court evinces that a final hearing in the matter was set for November 6, 2018, and that although timely notice of the hearing was filed, Mother failed to appear "as announced by her then

- 6 -

attorney, Jonathan Brown." According to the statement of the evidence, the court "allowed [Petitioners'] counsel to proceed by default without Jonathan Brown, attorney for [Mother]."

On December 28, 2018, the trial court entered an order granting a default judgment in favor of Petitioners against Mother based upon her "fail[ure] to appear in Court and [her] fail[ure] to plead or otherwise defend as provided by law and the Tennessee Rules of Civil Procedure and as ordered by the Court on August 14, 2018." The court concomitantly entered a separate order terminating Mother's parental rights. In its termination order, the trial court stated that a hearing had been conducted on November 6, 2018, wherein only Petitioners, their counsel, and the guardian *ad litem* were present. The court in its termination order further noted that Mother had failed to file an answer within the time allowed and that a separate hearing was conducted "to terminate Mother's parental rights." The court accordingly proceeded to make factual findings and conclusions of law concerning the clear and convincing nature of the proof presented in support of the statutory grounds for termination and the best interest of the Child based upon the testimony of Petitioners.

Notably absent from the trial court's orders is any determination that Mr. Brown had withdrawn from his representation of Mother or that the court had relieved him from such obligation. *See* Tenn. R. Sup. Ct. 13, § 1(e)(5). According to the record before us, Mr. Brown never sought to withdraw from his representation of Mother. Moreover, although the trial court warned in its October 25, 2018 order that "the Court would relieve Mr. Brown of his appointment and would allow [Petitioners' counsel] to proceed by default in the termination of parental rights case" if Mother failed to cooperate with Mr. Brown and file an answer containing her signature, our thorough review of the appellate record has not disclosed the existence of any subsequent order of the court relieving Mr. Brown of his appointed legal representation.

We are mindful of the fact that on January 24, 2019, Mr. Brown filed a motion on Mother's behalf, seeking his appointment to represent Mother on appeal concerning the termination of her parental rights. In the motion, Mr. Brown explained that he had received a letter from Mother, stating that she desired to appeal the termination of her rights, and he reiterated the fact that Mother previously had been found indigent by the court. Subsequently, on February 5, 2019, the trial court appointed Mr. Brown to represent Mother on appeal, finding Mother to be indigent. The February 5, 2019 order was entered *nunc pro tunc* to January 24, 2019.

We determine that Mr. Brown's January 24, 2019 motion was unnecessary in this matter because he had not been granted court approval to withdraw from his representation of Mother and because the proceedings had not been concluded. *See* Tenn. R. Sup. Ct. 13, § 1(e)(5). Furthermore, although a party can effectively waive her

right to appointed counsel by failing to cooperate with counsel, *see In re M.E.*, No. M2003-00859-COA-R3-PT, 2004 WL 1838179, at \*12 (Tenn. Ct. App. Aug. 16, 2004), the trial court did not specifically determine that such a failure to cooperate occurred in this matter, and the record on appeal is insufficient to support such a finding in any event. Inasmuch as Mr. Brown had neither withdrawn from his representation of Mother nor been relieved of that obligation by the trial court, Mr. Brown's duty to represent Mother continued through the time of the timely filing of Mother's notice of appeal. Petitioners' arguments concerning the timeliness of the notice of appeal's filing are therefore unavailing.[3]

## V. Mother's Answer

Mother argues that the trial court erred by failing to accept her answer because it was not personally signed by her. As relevant to this issue, Tennessee Code Annotated § 36-1-117(o) (Supp. 2019) provides that the "response or answer to a petition for termination of parental rights shall be signed by the respondent personally, sworn to and verified, and filed with the clerk of the court."

In *In re Bentley D.*, 537 S.W.3d 907, 912-13 (Tenn. 2017), our Supreme Court addressed the operative effect of the wording incorporated in Tennessee Code Annotated § 36-1-117(o), requiring that an answer be "signed by the respondent personally," as compared to the signature requirement contained in Tennessee Code Annotated § 36-1-124(d), which requires that a notice of appeal filed in a parental termination matter "shall be signed by the appellant." When analyzing Tennessee Code Annotated § 36-1-124(d) to determine whether it required the appellant to sign the notice of appeal personally or whether the appellant's attorney could sign the notice in a representative capacity, the High Court elucidated:

> Interestingly, Tennessee Code Annotated section 36-1-117(o) was enacted in the same legislation [as Tennessee Code Annotated § 36-1-124(d)]. When statutes are enacted together, the doctrine of *in pari materia* requires us to interpret them together. *Stevens ex rel. Stevens v. Hickman Comm. Health Care Serv., Inc.*, 418 S.W.3d 547, 560 (Tenn. 2013). The construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of the other statute. *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013). Section 36-1-117(o) provides as follows: "The response or answer to a petition for

---

[3] We further note that because Mr. Brown's representation of Mother had not concluded, the trial court should have allowed Mr. Brown to participate in the hearing concerning grounds for termination of Mother's parental rights and best interest of the Child, upon the court's finding that default judgment was proper. We will address this issue in a later section of this Opinion.

termination of parental rights shall be *signed by the respondent personally*, sworn to and verified, and filed with the clerk of the court." Tenn. Code Ann. § 36-1-117(o) (emphasis added). Thus, we note that although section 36-1-117(o) requires that the filing be signed by the litigant "personally," Tennessee Code Annotated section 36-1-124(d) omits this modifier. We must presume that the General Assembly acted purposely in excluding the word "personally" from the signature requirement of section 36-1-124(d). *See In re Kaliyah S.*, 455 S.W.3d at 554 ("'[W]here the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposely in the subject included or excluded.'") (quoting *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013)). Just as we must not overlook or ignore any words, "we must be circumspect about adding words to a statute that the General Assembly did not place there." *Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011). Significantly, in these two provisions adopted at the same time, the General Assembly distinguished between a filing that is signed and one that is signed "personally."

*In re Bentley D.*, 537 S.W.3d at 912-13. Although the above analysis as it pertains to Tennessee Code Annotated § 36-1-117(o) is arguably dicta, we embrace the High Court's reasoning and the principles of statutory interpretation the Court employed. We accordingly determine that the legislature intended that the answer in a parental termination case be signed by the named respondent personally and not solely by the respondent's attorney.

In this matter, because the answer filed did not contain Mother's signature, we conclude that the trial court did not err in rejecting it.[4] We therefore find Mother's first issue to be unavailing.

## VI. Propriety of Default Judgment

Mother argues that the trial court erred by entering a default judgment against her based upon her failure to file an appropriate answer to the complaint. As this Court has previously explained concerning default judgments generally:

> A default judgment, while a necessary part of a trial court's repertoire, is a big stick that should not be wielded haphazardly. Default

---

[4] Despite Petitioners' argument that the trial court could strike Mother's answer as a sanction pursuant to Tennessee Rule of Civil Procedure 11, we find nothing in the trial court's order demonstrating that Rule 11 was raised or considered. Having determined that the trial court could properly reject Mother's answer due to the lack of her signature, we conclude that any issue involving Rule 11 is pretermitted as moot.

judgments should be granted only when a defendant (1) makes no appearance in the case, in spite of being properly served, (2) appears, but fails to respond to the complaint, or (3) disobeys a pretrial order directing defendant to comply with some procedural requirement.

*First Union Nat'l Bank of Tenn. v. Abercrombie*, No. M2001-01379-COA-R3-CV, 2003 WL 22251347, at *3 (Tenn. Ct. App. Oct. 2, 2003) (internal citations omitted). In the instant action, although Mother did make an appearance in the case, she failed to properly respond to the petition and disobeyed the trial court's previous order directing her to comply with certain procedural requirements.

Tennessee Code Annotated § 36-1-117(n) provides that a default judgment can be entered against a respondent parent in a termination of parental rights matter "upon a finding that service of process has been validly made against that party in accordance with the Tennessee Rules of Civil or Juvenile Procedure and the statutes concerning substituted service; <u>however, in termination proceedings, proof must be presented as to legal grounds and best interest pursuant to § 36-1-113</u>." (Emphasis added.) A default judgment in a parental termination case, therefore, differs from a default judgment in other civil cases, wherein the typical civil defendant, "by suffering a default judgment to be entered against him, impliedly confesses all of the material allegations of fact contained in his complaint, except the amount of the plaintiff's unliquidated damages." *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984). By contrast, a default judgment in a parental termination case requires the presentation of proof concerning grounds for termination of parental rights and best interest. *See In re Savanna I.*, No. E2018-00392-COA-R3-PT, 2018 WL 6167386, at *6 (Tenn. Ct. App. Nov. 26, 2018) (affirming the trial court's grant of a default judgment against the respondent mother, following the presentation of sufficient proof of grounds and best interest during an evidentiary hearing, based on her failure to answer the termination petition or otherwise defend the action).

The underlined portion of the statute quoted above was added to the statutory framework in 2008, following two decisions of this Court addressing default judgments in parental termination actions: *In re B.G.J.*, 215 S.W.3d 396, 398 (Tenn. Ct. App. 2006), and *State, Dep't of Children's Servs. v. D.L.M.L.*, No. E2005-02194-COA-R3-PT, 2006 WL 1072155, at *1 (Tenn. Ct. App. Apr. 24, 2006). In *B.G.J.*, the respondent father in a termination of parental rights action hired an attorney to represent him in defending against such action, and the father's attorney filed a notice of appearance in the case. *See* 215 S.W.3d at 397. The father's attorney subsequently filed an answer to the petition on the father's behalf, but the answer was not filed within the thirty days allowed. *See id.* Upon the petitioners' motion, the trial court later entered a default judgment, which also terminated the father's parental rights, but did not hold an

evidentiary hearing.  *See id*.  Although the father's attorney attended the default hearing, the father apparently did not.  *See id*.

On appeal in *B.G.J.*, this Court determined that although the father had made an appearance in the matter, "he did not file his Answer or otherwise defend this suit within the time limits prescribed by the Tennessee Rules of Civil Procedure, and he was therefore subject to a default judgment pursuant to Tenn. R. Civ. P. 55." *See id*. at 398.  As this Court further explained, "[d]efault judgments are allowed in termination cases" when proper proof of statutory grounds and best interest is heard.  *See id*.  The Court ultimately determined that the default judgment terminating the father's parental rights should be vacated for lack of sufficient proof inasmuch as the trial court had failed to hear evidence regarding statutory grounds and best interest.  *See id.* at 399.  The Court further noted:

> As the United States Supreme Court has explained, a "fundamental requisite" of due process of law is the "opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S. Ct. 779, 58 L. Ed. 1363 (1914).  This requires "timely and adequate notice", and "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).  Since the father was not present at the earlier hearing and had no opportunity to confront the witnesses or present his own evidence, to affirm the Trial Court's ruling, which was based on evidence presented at an earlier hearing, would be a denial of the father's due process rights.

*See id*.

Similarly, in *State, Dep't of Children's Servs. v. D.L.M.L.,* the respondent mother failed to respond to the petition to terminate her parental rights, and the petitioner filed a motion for default judgment.  *See* 2006 WL 1072155, at *1.  The trial court then granted a default judgment, which terminated the mother's parental rights, without taking any proof concerning statutory grounds or best interest of the child.  *See id*.  As in *B.G.J.*, this Court vacated the termination order based on insufficient proof, stating:

> In light of the fact that the record contains absolutely no evidence, we are completely unable to perform any sort of a review to determine if there actually was sufficient proof to conclude that grounds for terminating Mother's parental rights had been established by clear and convincing evidence.  Likewise, we cannot determine if there is sufficient proof to conclude that there was clear and convincing evidence that termination of Mother's parental rights was in the best interests of the children.  In cases

such as this case when a parent does not respond to a petition to terminate parental rights and a default judgment is sought, a trial court nevertheless must hear testimony and otherwise conduct a hearing where sufficient evidence is offered for the trial court to determine if grounds for terminating the parental rights have been proven by clear and convincing evidence, and whether it has been proven by clear and convincing evidence that terminating the parental rights was in the best interests of the children. Without being able to evaluate this critical but absent evidence, we have no choice but to vacate the judgment of the Juvenile Court.

*See id.* at *2.

In this matter, Mother was clearly subject to a default judgment due to her failure to file a personally signed answer within the time allowed. *See In re B.G.J.*, 215 S.W.3d at 398. Unlike *B.G.J.* and *State, Dep't of Children's Servs. v. D.L.M.L.,* the trial court clarified in its termination order that it had held a separate hearing and taken proof concerning the statutory grounds for termination of Mother's parental rights and the best interest of the Child, as the statute demands. We therefore find no error in the trial court's grant of a default judgment to Petitioners.

## VII. Sufficiency of the Evidence

Mother argues that insufficient evidence was presented to demonstrate that termination of her parental rights was in the Child's best interest. In addition, we note that "in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination . . . regardless of whether the parent challenges these findings on appeal." *In re Carrington H.,* 483 S.W.3d at 525-26.

Our review of these issues is thwarted by the fact that no transcript from the termination hearing is contained in the appellate record. According to the parties' briefs, no recording of the hearing was made. In addition, the statement of the evidence adopted by the trial court fails to "convey a fair, accurate and complete account" of the proceedings in accordance with Tennessee Rule of Appellate Procedure 24. Instead, the statement of the evidence merely contains a procedural history of the case and a chronology of the pleadings filed therein.

With regard to the sufficiency of the record necessary to ensure appellate review in a parental rights termination case, this Court has previously elucidated:

> [A] record of sufficient completeness is required to permit proper appellate review of the parent's claims in termination of parental rights

proceedings. *L.D.N. v. R.B.W.*, No. E2005-02057-COA-R3-PT, 2006 WL 369275 (Tenn. Ct. App. Feb. 17, 2006); *In re J.M.C.H.*, No. M2002-01097-COA-R3-CV, 2002 WL 31662347 (Tenn. Ct. App. Nov. 26, 2002); *In re Adoption of J.D.W.*, No. M2000-00151-COA-R3-CV, 2000 WL 1156628 (Tenn. Ct. App. Aug. 16, 2000). In each of these cases, the termination of one or both parents' rights was reversed due to the lack of a sufficient evidentiary record for appellate review and remanded for a new trial. *L.D.N.*, 2006 WL 369275, at *5; *In re J.M.C.H.*, 2002 WL 31662347, at *5; *In re Adoption of J.D.W.*, 2000 WL 1156628, at *7. Specifically, in *J.D.W.* this court explained:

> [I]n cases involving the termination of parental rights, a record of the proceeding of sufficient completeness to permit proper appellate consideration of the parent's claims must be made in order to preserve that parent's right to an effective appeal. If the parent whose rights are to be terminated is indigent, then the trial court must ensure that such a record is created and made available to a parent who seeks to appeal. Because the trial record does not constitute a record of sufficient completeness for appellate review, we vacate the orders terminating the father's parental rights and granting the subsequent adoption and remand this case to the trial court for a new trial on this matter.

*In re Adoption of J.D.W.*, 2000 WL 1156628, at *4 (footnote omitted). <u>We further explained on remand that the trial court must determine if the parent is indigent and, if so, ensure there is a record of trial evidence that is sufficiently complete to allow an appellate court to review the evidence in accordance with applicable standards, even when the petition to terminate parental rights is filed by a private party</u>. *Id*. at *4, n.5.

The foregoing notwithstanding, we noted in *L.D.N.* that "a parental rights termination case where a Statement of the Evidence would be sufficient would be extremely rare." *L.D.N. v. R.B.W.*, 2006 WL 369275, at *5. However, no Tennessee court has held that an evidentiary record that is based solely on a statement of the evidence would automatically constitute an insufficient record. *Id*. More specific to the evidence in this record, our courts have not held that an evidentiary record that is based, in part, on a statement of the evidence is automatically insufficient. To the contrary, our courts have "stopped just short of holding that a Statement of the Evidence never will be sufficient for proper appellate review in a parental rights termination case and that a transcript always must be provided." *Id*.

- 13 -

> Nevertheless, the best way to proceed in a termination of parental rights case is by providing the appellate court with a complete transcript of all evidence. *Id*.

*In re Austin C.*, No. M2013-02147-COA-R3-PT, 2014 WL 4261178, at *4-5 (Tenn. Ct. App. Aug. 27, 2014) (emphasis added).

In the case at bar, we have not been presented with a record of sufficient completeness so as to permit proper appellate review of the statutory grounds for termination of parental rights or the best interest analysis. No transcript of the evidence is contained in the record, and the statement of the evidence approved by the trial court does not adequately convey a complete account of the evidence presented during the termination hearing. Because of the insufficiency of the record, we are constrained to vacate the trial court's order terminating Mother's parental rights and remand this action to the trial court for the development of a sufficient record that will permit proper appellate review of these issues.

We note, however, that because Mother's counsel of record was not present for the evidentiary hearing that was conducted concerning grounds, the inadequacy of this record cannot be cured by the trial court's mere adoption of a more complete statement of the evidence. We reiterate that Mother's attorney had neither withdrawn from his representation of her nor been relieved of that duty by the trial court. As stated in *B.G.J.*, a "fundamental requisite" of due process of law is the "opportunity to be heard," which includes "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *See In re B.G.J.*, 215 S.W.3d at 399. In order to ensure that Mother's constitutional rights are fully protected, we instruct the trial court upon remand to conduct a new evidentiary hearing with regard to the statutory grounds for termination and best interest of the Child and to allow Mother and/or her counsel to participate therein unless and until Mother's counsel is properly relieved of his duty of representation. We further instruct the court to ensure the availability of a record of sufficient completeness concerning the evidence presented at such trial so as to permit proper appellate review. *See, e.g., In re Austin C.*, 2014 WL 4261178, at *5.

## VIII. Conclusion

Based on Mother's failure to file a proper answer within the time permitted, we affirm the trial court's order granting a default judgment to Petitioners. For the foregoing reasons, however, we vacate the trial court's judgment terminating Mother's parental rights. We remand this matter to the trial court for a new evidentiary hearing concerning

- 14 -

statutory grounds for termination and best interest of the Child in accordance with this Opinion. Costs on appeal are assessed to the appellees, Robert A. and Taylor A.

_____
THOMAS R. FRIERSON, II, JUDGE